Okay, the next case this morning is case number 41608, no, excuse me, 4160681 and 4160682, Department of Corrections v. Scott. For the appellant, we have Kaitlyn, please pronounce your last name for me. Okay, mine has a scribble on it so I couldn't get it. Thank you though. And for the appellant, Carl Draper, please proceed. Good morning, Your Honors, Counsel, and may it please report. My name is Kaitlyn Chenever and I represent Plaintiff Appellant, Illinois Department of Corrections. This case is about Heidi Scott, a DOC employee and department head at Western Correctional Center who violated two prison rules regarding key security when she left her car keys in the restroom. Realizing that she would be disciplined because she had received an oral reprimand for a similar infraction one month earlier, she asked a subordinate employee, Tammy Weber, to falsely claim the key as her own in order to avoid discipline. This court should reverse the portion of the Civil Service Commission's decision to impose a suspension in lieu of discharge because cause existed to discharge Scott for these violations. And the Commission's decision was arbitrary, unreasonable, and unrelated to the requirements of Ms. Scott's service as a DOC employee. And this court should reverse the Commission because it failed to substantiate its decision to impose suspension instead of discharge. Turning to my first case, cause existed to discharge Ms. Scott for these violations. Western had two rules regarding key security. The first required employees to carry their keys on their persons at all times. And the second prohibited employees from leaving personal items, such as keys, in areas to which inmates may have access. All employees were made aware of these rules when they began working at Western. And Scott was certainly aware of this rule as she had been given an oral reprimand for failing to comply with it one month before the incident where she left her key in the restroom. The warden at Western explained that key security is of the utmost importance in a prison setting. And Carolyn Gursky, the employee hearing officer, similarly testified that if employees do not follow these rules, there can be serious breaches in security. And the warden explained that inmates cleaned the administrative building at Western, where Ms. Scott worked, and had access to several rooms while they were cleaning, including the restroom where Ms. Scott left her keys. In addition, the evidence is clear that Ms. Scott wanted to avoid getting into trouble when she realized that her key had been found and turned into the warden's office. She first asked Harrison, the correctional officer who found the key and turned it in, if she would go and get the key for her, explaining to Harrison that she didn't want to get in trouble. When Harrison was unable to retrieve the key, she then asked Weber to get the key for her. She again explained that she didn't want to get in trouble. Weber asked whether she would get in trouble if she asked for the key, and Scott told her no, that she would not get in trouble. Ms. Scott's status as a department head is also important here. She reported directly to the warden, had 10 to 12 employees that she supervised, was in charge of the budget at Western, and oversaw timekeeping for the facility. This cause existed to discharge her here. First, counsel, do you agree that even if we accept your argument that cause existed to discharge, that doesn't necessarily mean that the commission was wrong in not adopting the recommendation? If the commission did not want to adopt the ALJ's recommendation, it needed to make specific findings of fact or conclusions of law to depart from its recommended discipline, and it failed to do so here. So you do agree that it's not the end of the discussion, even if we say, okay, there was cause. We have to go further and analyze whether or not it was substantiated, the commission's decision, because they have the authority, even if one could reasonably say, well, the case was proven for discharge, they have the authority to not follow that. That's correct, Your Honor, assuming, again, that they substantiate their decision. And here, I'll move to my second point, that the commission failed to substantiate its decision here in several respects. The first is that in the commission's order, it decided to impose suspension rather than discharge when considering the, quote, nature of the offense. It's not clear what the commission meant by this, because Ms. Scott, after all, was charged with two offenses, leaving the key in the restroom, then also asking Weber to claim the key as her own in order to avoid discipline. The commission doesn't specify which offense it's referencing here, or which it means to reference. Counsel, could I ask you to clarify something here, if it can be clarified? In reading this, the record, and specifically the ALJ's decision, I couldn't determine what the ALJ concluded Ms. Scott had told Ms. Weber. I read in paragraph 14 of the decision, the ALJ's interpretation of the conversation, and maybe what Ms. Scott's mindset was, but I never really saw what finding, if any, the ALJ made in terms of what was communicated by Ms. Scott to Ms. Weber. In terms of a direction to Ms. Weber. Am I overlooking it? Was there something specific by the ALJ there? The ALJ specifically found in paragraph 27 of his recommended decision, this is summarizing Weber's testimony regarding her conversation with Ms. Scott, where Weber said that Ms. Scott said that she didn't want, asked me if I would get it for her. I asked why. She said, if I went to get it, she would get in trouble. Weber then asked, will I get in trouble? And Scott told her, oh no, you won't get in trouble. They like you, they don't like me, and I get in trouble for everything. I understand the ALJ summarized the witness' testimony, but the testimony was in conflict. Is that right? Harrison, the correctional officer who found the key, testified that she recalled hearing Ms. Scott tell Weber, tell them that the key is yours. Ms. Scott denies ever telling Weber to say that. Weber herself could not specifically recall. So that is a fact that the testimony was in conflict in terms of what Scott told Weber? It wasn't specifically stated. The evidence doesn't specifically show exactly what Scott told Weber. Well, there was testimony or evidence that Scott told Weber, claim those were your keys. And there was testimony or evidence that Scott denied telling Weber to say those were my keys. What did the ALJ conclude? Or is it apparent in the decision? I don't believe that the ALJ made a specific conclusion as to what specifically Scott told Weber when she went to go get the key, or instructed her what to say when she went to get the key. Okay. The reason is, I can't find it. And I think it's perhaps an important part of the case as to one of the accounts. And it seems like the ALJ is wanting to kind of gloss over it to a certain extent. It says Scott's attempt at deception did not come off as insidious. I don't understand what that means. It's probably not an answerable question. I was just hoping that I had overlooked something in the record in terms of either the ALJ's finding or the Commission's finding. I don't believe, again, Your Honor, I don't believe that the ALJ made a specific finding about exactly what was said by Scott to Weber. What Weber should say when she went to go get the key. I believe, though, the record is clear that Scott's intention in asking Weber to go get the key for her was so that Scott would avoid getting in trouble. Well, if that's all that was said, there's certainly an innocent construction of that. It could have been Scott telling Weber, could you go get my keys? And that doesn't necessarily imply that Weber is going to tell the warden those are my keys. She could just as easily have said to the warden, Heidi Scott asked me to come get her keys that she left. I mean, there's nothing particularly ominous about Scott telling Weber, you know, go get my keys. Your Honor, in addition, however, Scott testified that part of the reason that she asked Weber to go get the keys for her is because Weber knew about the past conflicts that Scott had with the warden's office and knew that she had a bumpy relationship with the warden's office. And this just adds to the implication that Scott was asking Weber to go to get the keys, to claim them as her own, so that Scott would not get in trouble for having left her keys in the restroom. But in any event, Your Honors, again, this goes back to the issue about the commission failing to substantiate its decision because there are several things that are just not clear from its decision. As I mentioned, the nature of the offense, it's not clear what offense it's referencing. The commission also stated that suspension was appropriate in light of other cases in which the commission has imposed less than discharge. The commission did not give any explanation of what cases it was looking at in its decision to impose suspension rather than discharge. Are they required to? In other words, what I'm saying, just in saying that the punishment here is more than what is normally needed out, is that enough or do they need to then say, for example, here's what we did in a similar case or something like that? It's certainly not a requirement that the commission reference other cases in its opinion, but it is important that the commission explain what those cases were about in order to give the parties an ability to understand whether those cases were similar factually. Wait a minute. You said it's not a requirement, but it's important. If the commission decides to look at other cases and look at what discipline was imposed in those cases and deciding the discipline to be imposed here, if the commission decides to do that, then the parties need to know what those other cases involved, the facts of those cases, whether they were similar to the facts of the case at bar. And the commission didn't provide any kind of explanation about what those cases were about. We don't know whether those cases involved an employee who left a post. It seems like it is a requirement. If they're going to make this conclusion in order for a reviewing court to determine whether they provided us with a substantial justification, do we need to know that is what I'm asking you, what those other cases were, or at least generally what they were and how they compared to the issue before it? Yes, Your Honor. In this case, because they referenced these other cases that they were presumably relying on in reaching their decision as to discipline, there should have been an explanation about what those cases involved. Again, those cases may have involved an employee who simply left a personal effect in a place it wasn't supposed to and therefore the discharge was not imposed. Or did it involve a person in a management position who asked a subordinate employee to help cover for them when they made a mistake? We just don't know based on the commission's decision as it stands now. In addition, the commission's decision stated that Scott had no expectation that discharge would result from simply a mistake. Again, there are several parts of this sentence that are not clear. It's not clear what the commission was referencing when it stated a mistake. Presumably that meant to reference just Scott leaving her key in the restroom, but then they don't explain why they ignored the rest of the ALJ's findings regarding her interactions with Scott, I'm sorry, with Weber, and why that created a problem within the DOC. And in addition, when they said that Scott had no expectation that discharge would result from simply a mistake, they pointed to no evidence in the record to support that finding that Scott had no expectation that she could be discharged. Okay, I'm right back to where I was with the prior question I asked, and that is, do they need to? Is that something they need to explain, or can they just conclude that, that she had no expectation that she would be discharged? To me, Your Honor, that sounds like a finding of fact, that there may have been some issue. Okay, so they need to tell us why they came to that conclusion? Right, that's correct. To substantiate its decision, that's what you're arguing? Right, that is correct, Your Honor. Okay. Well, let me ask you this. Why would that make any difference anyway, whether she thought that what she had done could cause her to be discharged or not be discharged? I don't understand what the relevance would be. It does not. It's certainly not the case that an employee must have an expectation of discharge in order for that to be upheld. So you're right that it's not necessarily relevant in this case, but this is just another example of a portion of the Commission's decision that's not supported by a specific finding of fact to support it. If the Court has no further questions? I have another question, if I can find my notes here, if you'll bear with me a second. Oh, here it is. The Administrative Code, I believe it's at Section 1.170, says, In determining the appropriate level of discipline, the Commission shall consider the nature of the offense, the employee's performance record, including disciplinary history. You agree that that's what the Code says that they need to consider? That is correct. Well, is just copying that language into its decision, does that amount to substantiating the decision made by the Commission? No, Your Honor. Because that doesn't tell me anything about the facts of this case. I would think they could incorporate that into any decision they made. That's correct, Your Honor. Copy the Code. That's correct, Your Honor. In this case, just quoting that language, particularly in this case, would not be sufficient to support its decision. Particularly because it was departing from the ALJ's recommendation of discharge. So it needed to support its decision with specific findings of fact and conclusions of law. And while the Commission's decision does reference and state the nature of the offense and considered for employment history or discipline history, the remainder of its decision did not provide any specific findings of fact to support its conclusion that suspension rather than discharge was appropriate here. And so the use of that language alone does not state its decision. If the Court has no further questions? I don't see any, but you will have rebuttal. Thank you. For the reasons stated above, we ask that this Court reverse the portion of the Commission's decision to impose only a 90-day suspension in lieu of discharge. Thank you. Thank you, Mr. Draper. Thank you. While he's approaching the podium there, I have one question. Real quick, though. Does the Commission not file a brief on in these kinds of cases? It just seemed odd to me. Is it not in this case? Do they sometimes? I'm not aware of that. I'm not sure what the facts are. Okay. Thank you. With my years of experience, may I volunteer an answer? I would like to have an answer to that. I've had plenty of experience on both sides of this in my career. And in the 35 years that I'm familiar with it, the Commission has never filed a brief. Okay. Interesting. Thank you. And I've sometimes asked the same question, but I should focus on my arguments this morning. May it please the Court and counsel, my name is Carl Draper. I'm here on behalf of Heidi Scott. And ask the Court to consider what we're really reviewing in this appeal today. Because the sole issue is whether the ultimate decision on the level of discipline is arbitrary. We're hearing a lot of argument about what the manifest weight of the evidence should be when there is no appeal on that issue. We, of course, reviewed that carefully because we did challenge that in the circuit court. And made a conscious decision not to appeal. And the reason is, quite simply, when you look at the record, the evidence is somewhat conflicting. And while I may think, and Heidi Scott certainly thinks, that the evidence weighs in her favor, it's conflicting. And it's not going to be found by the Court to be against the manifest weight of the evidence. So we're here dealing with what the Commission's responsibilities are under the personnel code. And I think the arguments that we've been hearing focus more on the Commission's role as if the Commission merely sat in review of a decision that is entered by an administrative law judge. And that's not the case. Mr. Draper, do you agree that if the Commission is going to change or not accept the recommendation of the administrative law judge, that it has to substantiate that? It has to give some explanation is what the law has evolved into describing. So, for example, the Bell decision from, I think, more than 25 years ago, revealed what the Commission commonly did in that time period, which would be to say that we adopt that portion of the administrative law, it was called the hearing officer then, the hearing officer's recommendation, to the extent not inconsistent with our opinion, and then announce an opinion. And there was no explanation. That was clearly found in Bell, for example, to be arbitrary. There has to be some explanation. But the extent of it is small. Let me ask you this. Do we have a situation here where they did accept the administrative law judge's factual findings? Is that the case here? Yes, let's look at what the Commission actually did, because they did far beyond what was required from Bell and some of the progeny. First of all, they made three major rulings. The first one they said, they adopt the findings of fact. Now that's just the facts. Two, they partially adopted the conclusions of law. And then they said, third, we modify the recommended disposition, and this is where the Commission fulfilled its statutory role to be the decider of the ultimate judgment in the case. And then as to that, they're required to list factors, and they listed factors, four of them, one with subparts. First, they said they did review the nature of the offense, and contrary to the argument about what this is, go back and look at the charges, and the charges themselves have to be specific and have to be proven. The charge about the key fob was about some dereliction, and there's argument about how utterly important this is, and yet conduct often speaks much, much louder than words. When Tammy Weber went in to get the keys, the warden simply slid them across the desk. That was his account. Now, later they quote the warden as saying how important security is, but it was so unimportant that he simply slid them across the desk. Ms. Harrison testified that she went looking for the owners of the keys, and had she found someone who claimed them, she would have just turned them over. It's remarkably not important. That's a good argument. Maybe that's what the commission thought, but how do I know that? They didn't put that in. They're a little sumbly concise as required by statute. And I do want to look at what the law requires here, because we did cite cases where this appellate court has given guidance and approved or disapproved of findings of the commission. The arguments that DOC is making would invert the role of the administrative law judge and the commission. They're asking this court to require the commission to do what it practically can't, which is go through in minuscule detail and point to and quote from the transcript various factors that they rely on when they're entitled to exercise the ultimate judgment that comes from the facts that are before them. And that's what they did here. Don't they have to give us enough to review, though? It is. Look at it. Is it enough to simply, I've read the code section, and is it enough to simply cite the code and say we followed the code? Well, for something like the nature of the offense, I don't know that there's more specificity that they have to give other than they gave that consideration that that's important. Like they're supposed to consider past performance evaluations, which they did in this case, which were that her performance evaluations were always exceptional. There are five specific ones in example, and I think testimony, that for 15 years that's what she had. They're supposed to consider the prior discipline. Their order doesn't say that, though. Again, you're making arguments that they should have concisely set forth. The administrative law judge specifically cited to the five exceptional performance evaluations, and otherwise that's supported in the record. I'm talking about the commission. Well, the commission adopted that part of it, for example. So that's how simple it is. The commission says we adopt the factual. No, just let me finish. I'm sorry. Adopt the factual findings, cite the code, and I guess it could have just cited the code instead of just verbatim laying it out, and then that's enough. Well, in the Welch case. They're giving me enough to review their decision. That seems to be what you're arguing, because I'm not getting that. Well, again, that would then turn the commission into a requirement that for all of the cases they have to decide, that they've now got to start making detailed, minuscule reference points any time that they reach some slightly contrary or opposite conclusion to the administrative law judge. In Welch, we both briefed. In Welch, the commission characterized the violations of the case as minimal, whereas the ALJ called them consequential, and there was nothing else to explain why they thought that, and the record wouldn't be clear. The appellate court reversed in that case. But in the Juvenile Justice versus Civil Service Commission case, the commission said that the factors they relied on in approving suspension instead of discharge was, and I'm quoting, due to the employee's 15 years of continuous service with no prior discipline and a finding that they had not proved that this was a premeditated act. Those are the only explanations that they give. The Civil Service Commission, that was then affirmed by this court. The Civil Service Commission has done more than that with their explanation in this case. And even in Welch, where it was overturned, they talk about a concise and explicit statement of the underlying facts supporting the findings, and as you pointed out here, the factual findings were adopted. And in Welch, we see people consorting with inmates, socializing, fraternizing, and bringing in contraband. There were about four charges that were very, very serious in nature, and yet even the ALJ and that commission found that there was no cause for discharge. Clearly, the Civil Service Commission in this case, dealing with much more minor offenses, and I'll explain why they called it a mistake here in a minute, decided this was not a dischargeable offense and that's well supported by the body of law that is out there. Even if they determined that it was a dischargeable offense, they were not required to discharge to uphold the recommendation. Is that correct? That's correct. They are not required to do so. The definition of cause for discharge is a legal question that has a very important threshold, and the commission in its own written portion of the order said that that threshold in their mind was not met, and they decided appropriately this was a serious offense that would get, and what they gave was the maximum suspension that the personnel code allows. The maximum suspension other than going to discharge is 90 days, and employees are suspended pending discharge up to 30 days, so that's a four-month suspension Heidi Scott received here. It's pretty significant. If it were determined that, okay, we want to accept that it was a dischargeable offense, then are you saying that you automatically lose if they prove that? If we were to side with opposing counsel and say it's a dischargeable offense, do you lose then? Had the commission decided that discharge was appropriate, we would have pursued the appeal from the circuit court ruling, yes, and here's why. The undisputed evidence in this case about the key fob was, in fact, that it was just a mistake. Everyone treated it as a mistake, including, of course, the warden, who was the highest ranking official testifying in this case. He viewed it as a non-issue when Tammy Weber came into the room. It was an issue when he learned that it belonged to Heidi Scott. Secondly, the second charge was that she asked a subordinate to lie, and the commission rules are very specific about pleading, and the personnel rules mandate that the charges be specific. Even the ALJ couldn't reach the conclusion that Tammy Weber was asked to lie. Tammy Weber denied it. What did the ALJ conclude in that regard? If you'll look at paragraph 13 in his findings, so he summarizes all of the evidence in numbered paragraphs, and he starts renumbering again in the middle of his report. In paragraph 13, he says that the respondent argued that there wasn't proof to support a finding that she lied, and then he said the evidence, in part, supports it. It does not support such an extreme interpretation of the events. Instead, he characterized her as irresponsibly begging a co-worker to retrieve, his words, the misplaced keys. It was both issues. The misplaced keys, obviously, is the kind of word you would use when you say a mistake was made. He ended up stretching, contrary to my argument, that they didn't prove she lied or told anyone to lie. There was a slight conflict on that based on Harrison's testimony alone. But Tammy Weber very clearly said, in cross-examination, I asked her, you didn't lie, did you? And she said, no.  And then she said she didn't remember. It depended on who was asking the question as to what answer you got. Charge 2 charges that Ms. Scott requested a subordinate employee to falsely claim the keys. I don't understand the charge specifically there, to falsely claim the keys. What does that charge mean? During the hearing, everyone understood it to mean to make a false claim that those keys were hers. Okay. And that's how everyone addressed the evidence. So, really, it seems like you have either then a conclusion that Ms. Scott did request Ms. Weber to claim ownership of the keys or she didn't. I don't understand the ALJ's finding that Scott's attempt at deception did not come off as insidious. Did he find that she asked Weber to claim the keys as her own or did he not? He never made that finding. In fact, Paragraph 14 then goes on to say, summarize, that we argued that that charge wasn't proven and his words were to some extent responded as correct. And then he went on to interpret it as an irresponsible act by somebody in a supervisory position, which is not precisely what was in the charge. Now, in fairness, I didn't pursue it because there was this brief testimony from Ms. Harrison that I believe is not credible, but is there, saying that she heard him tell Tammy Weber to claim them. But that's not what Tammy Weber said. That's not what Heidi Scott testified to. Even the investigator agreed that's not what Heidi Scott reported when he first investigated the matter either. So it's a pretty far cry to take the charge of this kind of deception and lying when really the case is about a mistake in misplacing keys and being a little irresponsible there and being what the administrative law judge said was irresponsible to ask Tammy Weber to be in that position to go get the keys, knowing that she might have to explain something. So with that, I think the nature of the case is, this is not a case about lying. It's not what the charges say. And I think the commission's decision is fully supported in saying, we looked at the nature of the case, and it's not about lying. It's about some level of lesser culpability, which would be being somewhat irresponsible, a word not in the charges. The commission went on and looked at what the law requires. Otherwise, performance record and prior discipline. They're required to do so. I was glad to see the court noticed that in the rules. In this case, we have an exceptional employee. That's what she's told by her employer, with 16 years of service. And the other requirement in the personnel code is progressive discipline. And we're jumping here from an oral reprimand at Department of Corrections to discharge. You know, all your arguments, why didn't the commission say any of that? That's my problem. You're saying, I think this is what they meant. They could have put something in this concise order. They could have done so other than to cite the code itself. The practical answer is, if you see the commission's agenda, it's very full for them for a statutory one meeting per month to get through a number of cases. So they're going to be shorter. Juvenile justice, even in that case, at least they said, we're taking a look at the 15 years and we're viewing it differently than the ALJ did. They didn't even do that here. Well, the commission could have said, we're viewing the 16 years of service here differently. That's pretty concise and that tells me that they looked at it differently than the ALJ, but they didn't do that. They just said they cited the code. I don't think the juvenile justice, that they and the administrative law judge, made any different finding about the past service. The ALJ is the one that put that in the record before them and they considered it. And the commission took the time to put, was it 15 or 16 years in its decision. They didn't do that here, though. The administrative law judge's report recites in its opening paragraphs that Heidi Scott began her service in 1999 with the Department of Revenue and recites that as his finding on the continuous service. It's right there in the record. So she's got the same 16 years of service that the commissions relied on. In juvenile justice, they simply said they didn't find it premeditated. The commission could have put it, I don't care how busy they are, it can't take that much effort to put one sentence into their decision. I mean, we might prefer it. But I'd also note if we're fortunate to have such a requirement of such a record in administrative review law. I've practiced in this county for a long time and there were judges who regularly were known for simply entering a judgment with no explanation. And on appeal, this court is left with having to affirm that if there's anything in the record to support it. And the judge has, the circuit judge has no obligation to put these details in. The commission's not required to cite all of its prior cases. They're not published. They're not indexed. It's not easy to do. But they're charged with being consistent and they know how they have regularly voted. They did look at length of service and commented on it and the exceptional performance, which is what juvenile justice is all about. And they stated that they needed to be consistent. The respondent didn't expect that discharge could happen from a mistake. The word mistake, I think, comes from the ALJ's own findings that our argument that charge two wasn't proven was somewhat well taken. There was no intent to lie. And then they decided that weighing it all, they have to weigh it. And they weighed it and said discharge would be disproportionate to the offense that was proven. I think that's more than adequate and far more than what the published cases affirming these decisions have required. And we might want more. About the ALJ's decision, ALJ spells out in a few lines that the ALJ's concern was the fact that Scott brought in this other employee to get those keys, involved someone that should not have been involved, caused more work for the Department of Corrections. And those were the reasons, clearly, that the ALJ made its decision that discharge was the appropriate penalty. What did the commission say about those findings? What in its order addresses those findings? Well, for one, they characterized it as more of a mistake because those findings weren't part of the charges. The mistake was leaving the key. Unfortunately, I have to agree with counsel and maybe some of you that the commission didn't say when it said mistake as to which count or both. But it did say that the nature of the offense wasn't that great. The ALJ said the mistake was leaving the key in the restroom. Right. Okay. Getting back to my question, what did the commission say for me to review regarding the involvement of the co-employee, which was obviously the reason for the recommendation of discharge? What in the commission's decision is there? I think that's part of the nature of the offense, which obviously is about poor judgment. And the commission could rely on the ALJ's recitation on that because he agreed there never was clear proof that Heidi Scott asked anyone to lie, nor that Tammy Weber did lie. Okay. So the nature of this is a lot – it's a different beast than what you get by reading the charges. I understand that's what you think and you might be right. But it's not in the commission's decision and how hard could it have been? But it's supported by the record. And I think that's where the court has to end its analysis is the General Assembly gave the commission the ultimate decision power. In fact, it's not a case we cited, but in other cases the commission can make credibility determinations even though they're not in the room and it's their credibility determinations that survive. They're given the responsibility to reach these ultimate decisions and they ultimately did. Only if DOC can point to proof that that's clearly arbitrary can this court review it. Otherwise, it's the commission's decision. And that's not impacted by the fact that we have a situation here where they adopted the factual findings? Because that seems to be unique in that when they adopt the findings but depart from the recommendation that they have this obligation to substantiate. And they're not required, nor did they adopt the conclusions or inferences from that. That's for the commission. And ultimately, they decide how to administer justice under the personnel code. And then one other question. Didn't the warden testify that when Ms. Weber came in to his office, she said, those are my keys? I'm stretching. If I'm recalling correctly, she went to the secretary and the secretary said, you know, go into the, the secretary let the warden know that she was there and then she went into the warden's office. That may be, and I don't want to affirm or, I could look it up very quickly, but, you know, I don't recall it clearly enough. That's why manifest way to the evidence is not an issue here. We didn't appeal. Thank you, counsel. Is there any rebuttal? Please proceed. Your honors, two points on rebuttal. First, counsel said that this is really just a case about an employee who left her keys in the restroom. And that's the full extent of the mistake here. But this case is about more. This case is also then about Scott's decision to involve Weber in her attempt to avoid discipline. Specifically asking Weber to go get the keys for her. And Scott herself testified that part of the reason she asked Weber to get the keys for her was because Weber was aware of the bumpy, the nature of the bumpy relationship she had with the warden's office because of discipline she had already received. So this is not just about leaving a key. This is also about involving a subordinate employee in an attempt to avoid discipline. Counsel, looking here just for purposes of my question, I want you to assume the adequacy of the commission's adoption of the findings of fact of the ALJ as satisfying what the statute requires and case law requires in terms of the commission making specific findings of fact. And have you focus on the second element, which is the commission needing to make specific conclusions of law to support its decision to decrease the proposed level of discipline. So it's that part of it that I want you to focus on. In its decision, the commission asserted as one of its conclusions of law, I'm going to identify it as a conclusion of law, even though the decision doesn't specifically identify it as such, but a specific conclusion of law that it used in supporting a decreased level of discipline. And that is discharge was disproportionate to the offense. Okay? That was one of the items identified by the commission. Is that a conclusion of law? Your Honor, I believe that is correct. That would be considered a conclusion of law. Okay. And that would then be a specific conclusion of law, correct? Yes, Your Honor. And that was used by the commission in decreasing the penalty here, the level of discipline. Is that right? That is correct. Okay. So if that is the case, then is the commission's decision sufficient in terms of meeting the level of specificity needed in order to change the level of discipline? Your Honor, I don't believe that that alone is enough to make the commission's decision sufficient because the commission also references other things that it clearly looked at when reaching its decision. But if what I just identified as a standalone is sufficient, the rest is surplusage. Is that right? It doesn't invalidate what you have acknowledged is a specific conclusion of law justifying a change in the level of discipline. Your Honor, to the extent that, and I'm not certain, but to the extent that the discharge being disproportionate to the offense was to the extent the commission relied on any other case law or cases discussing discharge and when cause for discharge exists, to the extent that it relied on those in concluding that discharge was disproportionate to the offense here in making that conclusion of law, that would not be sufficient, again, because there was no explanation of other cases as it mentions other cases. So it did take into account other cases where discharge was not imposed. It doesn't give us any idea about why, what those cases involved, or the facts of those cases. And one final point, Your Honors. Counsel mentioned that it would be difficult to require the commission to give detailed or minuscule facts to support its decision to change the level of discipline imposed. I don't believe that the department is asking for detailed or minuscule facts here. We're asking for any facts or details to give the department a sense of why the commission has to make a decision. For the reasons stated, we ask that you reverse the commission. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.